SAILING ASSOCIATES, INC., Plaintiff,

v.

RIVER BEND MARINE, INC., Sheldon Lake and Joseph P. Gearing, Defendants.

No. 83–6175–CIV.

United States District Court, S.D. Florida.

Oct. 20, 1985.

As Corrected Nov. 1, 1985.

---

Arthur M. Wolff, Fort Lauderdale, Fla., for defendants.

William C. Norwood, Miami, Fla., for plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NESBITT, District Judge.

THIS CAUSE came before the Court for non-jury trial on October 4 and 8, 1985.

The Court having reviewed the testimony, evidence and arguments of counsel presented, and being otherwise fully advised in the premises, the Court now makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Plaintiff, SAILING ASSOCIATES, INC., (SAILING ASSOCIATES), is a corporation organized and existing under the laws of Maryland.

2. Defendant, RIVER BEND MARINE, INC., (RIVER BEND), is a Florida corporation having its principal place of business in Fort Lauderdale, Florida.

3. Defendant, SHELDON LAKE, (LAKE), is a Florida resident and is the owner and operator of RIVER BEND MARINE, INC.

4. Defendant, JOSEPH P. GEARING, (GEARING), is a citizen and resident of the state of Pennsylvania.

5. On July 17, 1975 GEARING purchased the vessel "DONNA MARIE", now known as "STAR GAZER", (vessel), from SAILING ASSOCIATES' predecessor, Chesapeake Yacht Sales, Inc.

6. American Bank and Trust Company of Pennsylvania, (the Bank), provided financing for the purchase of the vessel in accordance with the terms of an Installment Agreement dated July 17, 1975. A Guaranty Agreement was then executed on June 30, 1975 between the Bank and Chesapeake Yacht Sales which provided that Chesapeake would be responsible in the event of a default by GEARING.

7. The Bank perfected the Preferred Ships Mortgage on the vessel at its port of documentation in Pittsburgh, Pennsylvania on June 2, 1976. The vessel received an official documentation number which was affixed to a cross member in the vessel's engine room. On June 16, 1976 the Bank duly recorded its first preferred ships mortgage in Pittsburgh, Pennsylvania, which

mortgage interest was inscribed on the face of the documentation papers located either in the chart table or the drawers of that table.

8. RIVER BEND supplied services, repairs and dockage for the vessel as early as December of 1976 and intermittently thereafter at the request of GEARING or his representatives. Specifically, the vessel was towed in to the marina operated by RIVER BEND on or about April 15, 1980 due to engine failure. Thereafter, RIVER BEND performed services on the vessel, including extensive work on the engine, for which bills were submitted to GEARING. LAKE's demands for payment upon GEARING during this period of time were fruitless. Consequently, on January 8, 1982, RIVER BEND brought an Admiralty In Rem action against the vessel in another division of this Court in Case No. 82–6011–CIV–JAG. This action was based on RIVER BEND's then invoice of Four Thousand Six Hundred Eighty-Four and 11/100 ($4,684.11) Dollars and the vessel was arrested on January 11, 1982.

9. GEARING did not appear in the In Rem action although he knew of the arrest of the vessel through communications from his former yacht captain, Maurice de Verteuil, who saw the arrest warrant on the vessel while it was berthed at RIVER BEND's marina. On April 15, 1982, Final Judgment was entered in favor of RIVER BEND and against the vessel for the amounts due RIVER BEND for labor, equipment and storage fees incurred by the vessel. On May 7 and 10, 1982, notice of the sale of the vessel scheduled for May 14, 1982 was published in the *Broward Review*, a newspaper of general circulation in South Florida. RIVER BEND was the sole bidder at the sale and secured title to the vessel for Two Thousand Five Hundred ($2,500.00) Dollars on May 14, 1982. On May 25, 1982 a certified letter was sent to GEARING advising him of the entry of the Final Judgment and of the impending confirmation of sale of the vessel. As a result, GEARING obtained counsel in Fort Lauderdale and began negotiations with RIVER BEND's counsel to effectuate a settlement of the amounts owed. At the request of GEARING's counsel, confirmation of the sale was deferred by RIVER BEND for two months to accommodate GEARING and allow him time to pay the judgment. Payment was not made by GEARING and the sale was confirmed by the Honorable Jose A. Gonzalez, Jr. on July 22, 1982.

10. RIVER BEND sold the vessel to Joseph and Mary Bowen in November, 1982 for approximately Forty Thousand ($40,000.00) Dollars. RIVER BEND's claim for approximately $32,000.00 was satisfied from the proceeds of this sale, which included the amount originally owed by GEARING, as well as for labor materials and additional equipment furnished to the vessel.

11. GEARING continued to make mortgage payments to the Bank through July, 1982 and did not notify the Bank of the arrest or sale of the vessel until sometime in September, 1982.

12. It is undisputed that RIVER BEND and LAKE did not search the custom-house records at anytime prior to the post-sale transfer of the vessel to Joseph Bowen, but as of the date of filing the In Rem action, RIVER BEND and LAKE knew that the vessel was federally documented. However, the hailing port on the transom was obscured or illegible when the vessel was berthed at RIVER BEND's marina and at all times thereafter. GEARING never specifically told LAKE that there was a Preferred Ships Mortgage on the vessel. Thus, no notice was given to the Bank by RIVER BEND or LAKE of the In Rem action before Judge Gonzalez.

13. SAILING ASSOCIATES first learned of the arrest and sale of the vessel in December, 1982, when the Bank notified SAILING ASSOCIATES that it intended to charge their account for all sums owed on the Installment Agreement pursuant to the Guaranty Agreement.

14. On March 4, 1983 the Bank commenced the instant action to set aside the

Admiralty In Rem sale and to impress a Preferred Ships Mortgage on the vessel.

15. On March 9, 1983 the Bank charged SAILING ASSOCIATES' account in the amount of $23,441.33 representing the outstanding mortgage balance on the vessel, interest and costs.

16. On November 4, 1983, SAILING ASSOCIATES moved to substitute as party plaintiff for the Bank in consequence of the back-charge under the Guaranty Agreement. Substitution was granted on December 15, 1983.

17. During the period in which SAILING ASSOCIATES was attempting to have itself substituted as party plaintiff herein, SAILING ASSOCIATES attempted to intervene in the In Rem action, which proceeding had been concluded almost one year before. The request for intervention was denied by Judge Gonzalez on June 24, 1983.

18. On April 10, 1984, SAILING ASSOCIATES filed its Amended Complaint in the instant action, alleging that RIVER BEND and LAKE had conspired with the purchaser of the vessel, Joseph Bowen to fraudulently and wrongfully take the vessel by judicial sale in deprivation of the Bank's Preferred Ships Mortgage. The Plaintiff seeks money damages or alternatively the impressing of the Preferred Ships Mortgage on the vessel. A Default Judgment has been entered in favor of SAILING ASSOCIATES and against GEARING, and a Final Judgment was entered thereon on February 22, 1984.

### CONCLUSIONS OF LAW

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The action is brought pursuant to the Ship's Mortgage Act of 1920, 46 U.S.C. § 911 et seq.

2. The Court has jurisdiction over this claim under 28 U.S.C. § 1331 and under 46 U.S.C. § 740.

█ 3. The Court concludes that neither of the Defendants herein have participated in a conspiracy to perpetrate a fraud with respect to the Admiralty In Rem action or the post-sale transfer of the vessel to Joseph Bowen. Fraud may be accomplished by a defendant's willful concealment or omission of a material fact. *United ed States v. Romano*, 736 F.2d 1432, 1442 (11th Cir.1984). The facts of this case do not show such a willful concealment or omission. While the vessel was known by the Defendants to be federally documented, the testimony reveals that the actual hailing port on the transom was obscured or illegible. Further, Defendant GEARING never specifically told SHELDON LAKE that there existed a Preferred Ships Mortgage on the vessel. Thus, the Defendants did not willfully conceal from the Court in the In Rem action the fact that there was a mortgage on the vessel. The Defendants did not try to expedite the judicial sale in order to complete this alleged fraud. In fact, the Defendants deferred confirmation of the sale in order to give GEARING time to pay the arrearages. The facts show that the Defendants instituted the In Rem action for the sole purpose of recouping the amounts due them for repairs and storage.

█ 4. The Court concludes that "under the facts of this case", RIVER BEND and SHELDON LAKE were not required to give notice or search the custom-house records to discover the mortgage nor to notify the Bank to intervene in the In Rem action. The Court is mindful of the apparent gap in the law under 46 U.S.C. § 911 et seq. which gives preferred status to ships mortgages recorded in compliance with the statute *but does not provide for notice requirements to the holder of such a mortgage.* (emphasis added). The specific issue of whether a libellant other than a mortgagee is required to search the records and give notice to a first preferred ship's mortgagee is at the heart of this lawsuit and has never been addressed by any court sitting in admiralty. In the absence of such precedence, the Court is constrained by the statutory language of 46 U.S.C. § 911 et seq. which does not impose such a duty on libellants other than mortgagees.

5. The Court finds RIVER BEND and SHELDON LAKE acted in full compliance with the requirements of the Federal Rules of Civil Procedure and the Supplemental Rules for Admiralty and Maritime Claims in connection with the In Rem action. The vessel was properly arrested and the Defendants caused the required newspaper publications to be made under Supplemental Rule C. Despite the inequity worked by the "imputed" notice provisions of Supplemental Rule C with respect to a first preferred ship's mortgagee, this Court is bound by the Supplemental Rules and the decisions interpreting these rules. *See, Merchants Nat'l Bank v. Dredge General G.L. Gillespie*, 663 F.2d 1338, 1370 (5th Cir.1981), *cert. dismissed*, 456 U.S. 966, 102 S.Ct. 2263, 72 L.Ed.2d 865 (1982), (finding the procedures codified in Supplemental Rule C constitutionally adequate.)

Based on the foregoing, the Court finds in favor of the Defendants, and against the Plaintiff. Therefore the Court finds it unnecessary to rule on the issue of laches raised by the Defendants.

ORDERED AND ADJUDGED that Plaintiff, SAILING ASSOCIATES, INC., take nothing by this action and that the Defendants, RIVER BEND MARINE, INC. and SHELDON LAKE, go hence without day.